**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-------------------------------------------------------x
SUTTON, LTD.,                                          :
                                                       :
                      Plaintiff,                       :
                                                       :
        -against-                                      :        No. 22-_____
                                                       :
ELIZABETH WYCKOFF, individually                        :
and as Executrix of the Estate of E. Lisk              :        **COMPLAINT**
Wyckoff, deceased; HYDE PARK                            :
ASSOCIATES LLC; and JOHN DOES #1-                       :        **JURY TRIAL DEMANDED**
10,                                                    :
                                                       :
                      Defendants.                      :
-------------------------------------------------------x

Plaintiff Sutton, Ltd., through its attorneys Withers Bergman LLP, as for its Complaint against

defendants Elizabeth Wyckoff, individually and as Executrix of the Estate of E. Lisk Wyckoff,

Hyde Park Associates LLC, and John Does #1-10 (collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This dispute centers on the actions of E. Lisk Wyckoff ("Mr. Wyckoff") and Elizabeth

        Wyckoff ("Mrs. Wyckoff") (collectively, the "Wyckoffs"), who both took advantage of E.

        Lisk Wyckoff's position as the director of Plaintiff Sutton, Ltd. ("Sutton" or "Plaintiff") to

        fraudulently siphon and steal millions of dollars in assets from Sutton.  The Wyckoffs

        engaged in a sweeping fraud which included but was not limited to depleting Plaintiff's

        bank accounts, making sham loans using Plaintiff's money for their personal gain, and

        diverting Plaintiff's funds to the Wyckoffs directly or through their entities such as the

        Wyckoffs' personally owned company named Hyde Park Associates LLC, a defendant in

        this action.  In this case, Plaintiff seeks to recover millions of dollars that the Defendants

        stole from it through Defendants' massive fraud.

2.  Plaintiff is a company incorporated on or about August 16, 1985, under the laws of the Territory of the Virgin Islands (the "British Virgin Islands" or the "BVI").  In or about February 2000, Sutton and E. Lisk Wyckoff agreed that E. Lisk Wyckoff would serve as a director of Sutton effective February 22, 2000.  Pursuant to that agreement, as well as to all laws applicable to the obligations of directors, E. Lisk Wyckoff took on the responsibilities of serving as a fiduciary to Sutton.  E. Lisk Wyckoff became Sutton's sole director in 2004 after his co-directors resigned, thereby continuing, and in fact enhancing, his fiduciary obligations to Sutton.

3.  At the time of Sutton's founding, BVI companies often issued bearer shares, whereby the physical holder of a bearer share certificate would be considered a shareholder of the company.  Sutton issued one such bearer share, which has always been and continues to be an asset of the Battersea Trust, a Bahamian Trust, with the physical bearer share certificate held by the Battersea Trust's trustee, which was, from 2003, the Bank of Nova Scotia Trust Company (Bahamas) Limited.

4.  The BVI Business Companies Act 2004, as amended, required all bearer share certificates to be deposited with a custodian before December 31, 2009 (the "Transition Date"). However, even though E. Lisk Wyckoff was the sole director during the period 2004 through December 31, 2009, he failed and/or refused to cause Sutton's bearer share to be deposited, converted or exchanged before the Transition Date.  This resulted in Sutton's single bearer share becoming "disabled" as of January 1, 2010, which, as is discussed more fully below, enabled the Defendants to perpetuate their fraud and disabled Sutton and its beneficial owner from being able to take any action to protect Sutton from Defendants'

misconduct unless and until Sutton was able to correct E. Lisk Wyckoff's failure and/or refusal to deposit, convert and/or exchange the Sutton bearer share.

5.    E. Lisk Wyckoff died in November 2012, leaving Plaintiff without any directors and, as a result of E. Lisk Wyckoff's failure and/or refusal to deposit, convert and/or exchange the Sutton bearer share, disabling Plaintiff's shareholder and leaving without any ability to make shareholder decisions with respect to Sutton.  Thus, as of Mr. Wyckoff's death, Sutton effectively became completely disabled, unable to function as a company, unable to carry out any of its operations, and unable to legally act on its own behalf.

6.    Before his death, E. Lisk Wyckoff signed a document purporting to name his wife Elizabeth Wyckoff as a successor director, but E. Lisk Wyckoff lacked the authority to name his wife or anyone else as his successor.  Upon information and belief, Mrs. Wyckoff knew she was not legally authorized to act as Sutton's director, but despite that knowledge, she falsely held herself out as, and purported to act as, a director of Sutton.

7.    On October 8, 2015, the beneficial owner of Sutton caused a BVI proceeding to be commenced to appoint a receiver so that Plaintiff could attempt to remedy the disabled status of Plaintiff's bearer share and allow the beneficial owner of Sutton to regain control and appoint a new director.

8.    Through an order dated October 10, 2018 (the "BVI Order"), the Eastern Caribbean Supreme Court, Court of Appeal for the BVI directed the appointment of a receiver on behalf of Sutton to receive Sutton's bearer share and to determine whether to redeem this bearer share and, if so, in what manner.

9.     The receiver's investigation revealed that Sutton holds or previously held various assets, some of which were in the United States.  In August 2019, the receiver commenced proceedings under 28 U.S.C. § 1782 to obtain further documents, including documents from Mrs. Wyckoff, pertaining to Plaintiff's financial status.

10.     As he proceeded, the receiver's investigation began to reveal that for many years Sutton's director E. Lisk Wyckoff, in concert with his wife Elizabeth Wyckoff, had misappropriated Sutton's assets, and had fraudulently siphoned and/or stolen millions of dollars of Sutton's funds to the point that Sutton's accounts at, *inter alia*, Citigroup Private Bank and Webster Bank, N.A. were significantly depleted and, in some instances, almost entirely depleted. For example, documents the receiver obtained revealed for the first time that the Wyckoffs had opened a sham account at Webster Bank in or about 2002 in the name of their personal company, defendant Hyde Park Associates LLC, telling Webster Bank that Hyde Park Associates LLC's "doing business as" name was Sutton Ltd, which caused Webster Bank to label the account with respect to the outside world as an account of Sutton Ltd.  Through this account, Defendants misappropriated, fraudulently siphoned, and/or stole more than $6.8 million in funds belonging to Sutton.

11.     Plaintiff does not have full insight into the scale of the Wyckoffs' theft of Plaintiff's assets, which theft the Wyckoffs systematically concealed from Plaintiff.   Mrs. Wyckoff continued those concealment efforts for nearly two years in the Connecticut proceeding brought pursuant to 28 U.S.C. § 1782, by refusing to produce pursuant to subpoena all Sutton-related documents that the receiver had requested, even though the Connecticut U.S. District Court issued an order compelling her to do so, resulting in the receiver obtaining monetary sanctions against her.   Documents eventually obtained in that

proceeding indicate that, unbeknownst to Plaintiff, the Wyckoffs had been misappropriating Sutton's assets for years, including soon after E. Lisk Wyckoff became Sutton's director in 2000, and fraudulently siphoned and/or stole what appear to be tens of millions of dollars from Sutton to enrich themselves.

12.     Upon information and belief, the limited documents that surfaced through the BVI receiver's investigation are just the tip of the proverbial iceberg of the Wyckoffs' multimillion dollar misappropriation of Plaintiff's assets.  It was not until after conclusion of the receiver's efforts that Plaintiff became resurrected as a company, with its bearer share redeemed and directors appointed for the first time since 2012.  Plaintiff is now finally able to seek to vindicate its rights against Defendants and hereby does so by filing this action.

## PARTIES

13.     Plaintiff Sutton, Ltd. is a company incorporated under the laws of the British Virgin Islands with its principal place of business in the British Virgin Islands.

14.     Defendant Elizabeth Wyckoff is an individual residing in Old Lyme, Connecticut.  She was the wife of E. Lisk Wyckoff prior to Mr. Wyckoff's death on or about November 26, 2012.  Mrs. Wyckoff has been the executrix of the Estate of E. Lisk Wyckoff (the "Wyckoff Estate"), having been appointed as executrix by the Niantic Regional Probate Court.

15.     Defendant Hyde Park Associates LLC ("Hyde Park"), upon information and belief, has been a Connecticut limited liability company with its principal place of business in Essex, Connecticut and was formed on December 24, 1997.  Upon information and belief, Mrs.

Wyckoff was a member of Hyde Park as was Mr. Wyckoff until his death in November 2012.

16.     Defendants John Does #1-10 are individuals and/or entities controlled by the Wyckoffs for whom Plaintiff does not yet know the true names and capacities, and for that reason Plaintiff has sued said Defendants by such fictious names.  Plaintiff prays leave to insert the true names when they are ascertained.  Plaintiff is informed and believes that each of the Defendants designated as a Doe is legally responsible and liable in some manner for certain of the events, activities and obligations referred to herein.

## JURISDICTION

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because of the diversity between parties and the amount in controversy exceeds $75,000.

18.     Venue is proper as the District of Connecticut is the judicial district in which defendant Elizabeth Wyckoff resides and the place of formation of defendant Hyde Park and in which a substantial part of the events or omissions giving rise to the claims occurred.

## GENERAL ALLEGATIONS

19.     Sutton is a company incorporated under the laws of the British Virgin Islands on or about August 16, 1985, to hold various assets and/or funds.

20.     At the time of Sutton's incorporation, BVI companies often allocated shares by issuing bearer shares.  A "bearer share" is defined by section 2 of the BVI Business Companies Act 2004, as amended (the "2004 Act"), as "a share represented by a certificate which states that the bearer of the certificate is the owner of the share . . . ."

6

21.     Sutton issued one such bearer share, which has always been and continues to be an asset of the Battersea Trust, a Bahamian Trust, with the physical bearer share certificate held by the Battersea Trust's trustee, which was, from 2003, the Bank of Nova Scotia Trust Company (Bahamas) Limited.

22.     Following Sutton's formation, Mr. Wyckoff agreed with Sutton that he would become a director of Sutton on or about February 22, 2000, with extensive fiduciary obligations to Sutton pursuant to that agreement and to all laws applicable to the obligations of directors. He became the sole director of Sutton on or about September 14, 2004, after his co-directors resigned.

23.     The 2004 Act limited the ability of companies incorporated under the laws of the British Virgin Islands to issue bearer shares and required all companies that had issued bearer shares to deposit the existing bearer share certificates with a custodian before the Transition Date of December 31, 2009.  It was the responsibility of the company director and holders of the bearer shares to ensure that bearer shares were properly deposited.  Specifically, the director was responsible for making certain that there were no undeposited bearer shares so that shareholders could maintain their rights and entitlements as shareholders.

24.     However, Director E. Lisk Wyckoff failed and/or refused to deposit, convert, or exchange the Sutton bearer share.  As a result, Sutton's bearer share became disabled as of January 1, 2010, and the BVI Financial Services Commission ("the Commission") was entitled, under BVI law to seek the liquidation of Sutton, which would have led to Sutton's assets becoming *bona vacantia*—essentially without a designated owner.

25.     By failing to redeem Sutton's bearer share, Mr. Wyckoff was able to perpetuate his wrongful conversion of Sutton's assets because his failure to deposit and redeem Sutton's

bearer share entirely disabled Sutton and its shareholder from discovering Defendants' fraudulent scheme and from doing anything about it.

26.    On November 26, 2012, Mr. Wyckoff, the sole director of Sutton, died.  Because he was the sole director, there was no subsequent director who could exercise any of Sutton's powers of redemption over the bearer share following Mr. Wyckoff's death.

27.    To further his fraudulent scheme, Mr. Wyckoff, while he had been alive, had attempted to appoint Mrs. Wyckoff as his successor, but he lacked the authority to do so.  Upon information and belief, Mrs. Wyckoff knew she was not a properly appointed director.  Yet, she purported to assume the directorial duties of Sutton and falsely held herself out as having that authority.

28.    On October 8, 2015, the Bank of Nova Scotia Trust Company (Bahamas) Limited, in its capacity as trustee of the Battersea Trust, which held Sutton's bearer share, commenced the BVI Proceeding seeking relief to enable the bearer share to be dealt with and, eventually, sought appointment of a receiver to resolve the redemption issue.  On October 10, 2018, the BVI Court of Appeal rendered the BVI Order that resulted in the appointment of Nicholas Carter, the Managing Director and British Virgin Islands Territory Leader at PricewaterhouseCoopers (BVI) Limited, to serve as the receiver for Sutton (the "Receiver").  The Receiver thereafter began the endeavor of ascertaining the value of Sutton's assets in order to determine the bearer share issue.

29.    The Receiver's initial investigation into Sutton's affairs indicated that Sutton held at least some assets within the United States.  These holdings included but were not limited to: (1) investments in funds and stocks held at Citigroup Private Bank in New York City ("Citi");

(2) funds held at Webster Bank, N.A. in Connecticut ("Webster Bank"); and (3) an investment in Carlyle Partners II L.P., a fund of the Carlyle Group L.P. ("Carlyle").

30.    To get more details regarding certain of these assets, the Receiver commenced two proceedings under 28 U.S.C. § 1782, one in the U.S. District Court for the Southern District of New York on August 19, 2019, case no. 19-mc-00387-PGG, and one in this Court on August 20, 2019, case no. 19-mc-00102-JBA (the "Connecticut Section 1782 Proceeding"), seeking to serve subpoenas on Webster Bank and Citi for documents and information regarding Sutton's assets.  Such information was necessary for the Receiver to determine the issue of bearer share redemption in the BVI Proceeding, and to support and justify to any potential challenger in that proceeding the determination that the Receiver was required to make in the BVI Proceeding.

31.    In the Connecticut Section 1782 Proceeding, the Receiver also requested to serve a subpoena on Mrs. Wyckoff based on the Receiver's understanding that Mrs. Wyckoff was the fiduciary of the Estate of E. Lisk Wyckoff and thus had access to Sutton's records and financial documents.  Again, such records were essential for the Receiver to carry out his receivership mandate of ascertaining the value of Sutton's assets.

32.    This Court granted the Receiver's application in the Connecticut Section 1782 Proceeding in or about September 2019, and the Receiver served Webster Bank and Mrs. Wyckoff with subpoenas shortly thereafter.  Mrs. Wyckoff unsuccessfully attempted to quash the subpoena, and the Court ordered her to produce documents.

33.    Mrs. Wyckoff made her first document production on November 7, 2019.  The production was woefully deficient and materially failed to comply with Mrs. Wyckoff's obligations pursuant to the Subpoena.  Among many defaults, Mrs. Wyckoff produced only 162 pages

consisting of a disorganized amalgamation of documents and partial documents from various years.  Certain of the produced documents contained incomplete renderings of their content, and thus left out what was likely critical information concerning the relevant financials.

34.   In response to the incomplete production, on January 29, 2020, the Receiver filed a motion asking this Court to compel Mrs. Wyckoff to produce further documents and fully comply with the subpoena that was served.  This Court granted this relief on March 5, 2020 and ordered Mrs. Wyckoff to comply with the subpoena and produce an affidavit detailing her efforts to locate responsive documents and the extent to which responsive documents have been located.  However, Mrs. Wyckoff continued to fail to comply with any aspect of this Court's March 5, 2020 order.  It was not until January 29, 2021, that Mrs. Wyckoff produced what she asserted were the final remaining responsive documents within her possession and the affidavit required by the March 5, 2020 order.  On February 5, 2021, this Court granted the Receiver's motion to hold Mrs. Wyckoff in contempt for evading the subpoena for nearly a year and a half.  Mrs. Wyckoff was ordered to pay the Receiver $14,000 in attorneys' fees as a discovery sanction.

35.   The documents produced in response to the Section 1782 subpoenas eventually revealed that the Wyckoffs had been perpetrating a sweeping fraud to siphon millions of dollars from Sutton for their own personal use, and that they went to great lengths to conceal this fraud from Sutton.

36.   For example, Sutton's last account statement of its Carlyle investment indicates that over 99.99% of the investment's total fair value of $13,404,868 was depleted, leaving only $98

remaining in the account when it was closed out several years prior to the Receiver's appointment.

37.     In addition, Webster Bank account documents revealed for the first time that, on or about September 14, 2002, Mr. and Mrs. Wyckoff had signed their names on a business account application and opened an account with Webster Bank in Hyde Park's name—an entity not affiliated with Sutton but whose members were Mr. and Mrs. Wyckoff—that they labeled as purportedly "doing business as" Sutton, Ltd. (the "Sham Account").  Upon information and belief, the Wyckoffs opened the Sham Account to serve only their own interests at the expense of Sutton and named it in such a way so as to defraud Webster and Sutton.  Specifically, upon information and belief, during the 2009 to 2019 period alone, Mr. and Mrs. Wyckoff used the Sham Account to fraudulently siphon and/or steal more than $6.8 million of Sutton's money and divert such funds to themselves or for their benefit, often through the Hyde Park entity.  Sutton currently does not have information regarding the amount of money that Defendants, upon information and belief, siphoned through the Sham Account between 2002 and 2009.

38.     In fact, the Wyckoffs have misappropriated Sutton's assets through a developed *modus operandi* of defrauding companies that they managed or to whose assets they had access.  For example, in the 2010s, the New York State Attorney General's Office (the "AG's Office") conducted an investigation into the Wyckoffs' conduct as trustees of another entity, named the Homeland Foundation, and uncovered a fraud strikingly similar to the fraud they perpetrated here.  The AG's Office found that the Wyckoffs had a practice of "making extravagant grants to third-party institutions, many of which had some connection to one of the [Wyckoffs]" and that the Wyckoffs essentially used the Homeland Foundation

as their "personal piggybank."[1]  This "unauthorized activity conducted by the [Wyckoffs] included the unauthorized removal of Homeland property by Elizabeth Wyckoff, and investments from the Homeland Foundation into Ovatech LLC, a company which Lisk Wyckoff served as president and invested in personally."[2]  According to the AG's investigation, from 2006 to 2011, the Homeland Foundation's account allegedly dwindled from $39.8 million to $17.4 million as a result of the Wyckoffs' misconduct.[3]  Documents that Plaintiff only recently obtained show that, at or around the same time, Mr. Wyckoff was transferring money from Sutton accounts to either the Sham Account or other accounts solely owned or controlled by Defendants.

39.    Because Mr. Wyckoff failed and/or refused to redeem Sutton's bearer share under the 2004 Act, Sutton became an effectively defunct company as of January 1, 2010.  Upon information and belief, Mr. Wyckoff failed and/or refused to redeem Sutton's bearer share intentionally to perpetuate Defendants' fraudulent scheme and to do so without ever being discovered.  It was only through extensive and lengthy court proceedings in the BVI that Plaintiff was able, after many years, to finally thwart Defendants' fraudulent scheme.  It was not until in or about 2021 that the BVI Court permitted the appointment of new directors for Sutton.  Thus, because the bearer share issue was not resolved until in or about 2021, Sutton, prior to that time, had no directors at all and no shareholders with any authority to function as shareholders.  The Wyckoffs thus fraudulently concealed their

---

[1] https://www.poughkeepsiejournal.com/story/news/local/2015/09/01/43-million-settlement-reached-local-foundation/71534634/; *see also* https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-43-million-settlement-former-leaders-new-york-city.
[2] https://www.poughkeepsiejournal.com/story/news/local/2015/09/01/43-million-settlement-reached-local-foundation/71534634/.
[3] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-43-million-settlement-former-leaders-new-york-city.

massive fraud and the documents that might reveal it, and even if Sutton and its beneficial owner had somehow discovered that fraud, the Wyckoffs had engineered the situation so that Sutton and its beneficial owner had no ability to commence an action in a U.S. court on behalf of Sutton against the Defendants.  Now, after years of extraordinary effort and enormous expense to reactivate Sutton as an operating company, Sutton brings this action to pursue claims against Defendants and seek recovery of the millions of dollars that Defendants stole from it.

## CLAIMS

### First Claim for Relief – Fraud

### (Against Elizabeth Wyckoff Individually and as Executrix of Estate of E. Lisk Wyckoff and Hyde Park Associates LLC)

40.     Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41.     The Wyckoffs established Hyde Park Associates LLC.

42.     The Wyckoffs, through Hyde Park, subsequently opened an account at Webster Bank purportedly "doing business as" Sutton.

43.     The Wyckoffs' and Hyde Park's representation that Sutton was merely a "doing business as" name was false.  Hyde Park is not affiliated with Sutton and was never authorized by Sutton to "do business as" Sutton.

44.     In addition, by instructing Webster Bank to place Sutton's name on the bank statements, the Wyckoffs were able to falsely represent to Sutton and its beneficial owner, and did falsely represent to Sutton and its beneficial owner, that the Webster Bank account was Sutton's bank account, when in fact the Wyckoffs and Hyde Park secretly knew that Hyde

Park was the actual account owner. The Wyckoffs and Hyde Park never disclosed, and fraudulently omitted from disclosures, to Sutton and its beneficial owner that the account was instead owned by Hyde Park rather than Sutton.

45.    The Wyckoffs and Hyde Park knew that they were misrepresenting that the Webster Bank account was opened and owned by Sutton, knew that Hyde Park was not authorized to "do business as" Sutton and knew that the account was in fact held by Hyde Park and not by Sutton.

46.    The Wyckoffs and Hyde Park made these misrepresentations and omissions of material fact to induce Webster Bank to allow Wyckoffs and Hyde Park to withdraw Sutton's funds from the account at Webster Bank and to induce Sutton and its beneficial owner not to raise questions about Sutton's funds being placed into a bank account that was secretly owned by Hyde Park, a company owned by the Wyckoffs.

47.    Sutton reasonably believed the Wyckoffs' false representations and omissions that the account was an account opened and held by Sutton.

48.    On information and belief, Webster Bank reasonably believed the Wyckoffs' and Hyde Park's misrepresentations and allowed Defendants to withdraw funds from Sutton's account.

49.    The Wyckoffs and Hyde Park, through Hyde Park, did in fact withdraw Sutton's funds from the "Sutton" account at Webster Bank between 2009 and 2019, in an amount of more than $6.8 million.

50.    The Wyckoffs and Hyde Park , through Hyde Park, withdrew the Sutton assets on a near-monthly basis.

51.   The Wyckoffs and Hyde Park intentionally concealed these withdrawals from Sutton including by keeping financial records in their possession, hiding the money transfers, and disabling Sutton and its beneficial owner from discovery their fraud by failing and refusing to redeem Sutton's bearer share.

52.   The Wyckoffs and Hyde Park intentionally concealed their conversions of Sutton's assets to delay and/or prevent Sutton from learning about, and halting, the massive fraud they were perpetrating.

53.   Documents produced in the Connecticut Section 1782 Proceeding confirmed that the Wyckoffs and Hyde Park had in fact converted at least $6.8 million as a result of their fraud.

54.   As a result of the Wyckoffs' and Hyde Park's fraud, Sutton has been injured and damaged in an amount in excess of $6.8 million, with the precise amount to be determined at trial.

55.   Sutton seeks compensatory damages in an amount in excess of $6.8 million, plus pre-judgment interest, with the precise amount to be determined at trial.

56.   Sutton also seeks punitive damages (in an amount to be determined at trial) as a result of Wyckoffs' and Hyde Park's willful fraud against Sutton and Webster Bank, which paralleled the fraud the Wyckoffs committed against other members of the public, such as the Homeland Foundation, at or about the same time.

## Second Claim for Relief – Conversion

## (Against Elizabeth Wyckoff Individually and as Executrix of Estate of E. Lisk Wyckoff and

## Hyde Park Associates LLC)

57.     Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

58.     Funds in Plaintiff's accounts, including but not limited to those in the Carlyle, Citi, and the account in Sutton's name at Webster Bank, belong to Sutton.

59.     The Wyckoffs and Hyde Park took possession of and/or exercised control over the funds and have deprived Sutton of those funds.

60.     The Wyckoffs and Hyde Park were not authorized to take possession of the funds or use them for their own personal gain.  At no time did anyone at Sutton who had authority to grant permission or authorization regarding use of Sutton's funds ever authorize or give permission to the Wyckoffs and Hyde Park to use Sutton's funds for the Wyckoffs' personal use or personal gain.  The Wyckoffs and Hyde Park had no lawful authority for taking possession of or converting Sutton's funds for their own purposes.

61.     The Wyckoffs and Hyde Park thus converted Sutton's funds for their own benefit and to the detriment of Plaintiff.

62.     The Wyckoffs and Hyde Park have failed and/or refused to return the funds to Sutton.

63.     The Wyckoffs' and Hyde Park's actions constitute a commission of the common law tort of conversion.

64.     The Wyckoffs' and Hyde Park's conduct was without authorization or permission of Sutton, and without any other lawful authority.

65.     Sutton was damaged by the Wyckoffs' and Hyde Park's conversion of the funds for their own benefit in an amount in excess of $6.8 million, plus interest and other appropriate damages, with the exact amount to be determined at trial.

### Third Claim for Relief – Intentional Fraudulent Transfer, Conn. Gen. Stat. § 52-552(e) (Against All Defendants)

66.     Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

67.     Defendants either effected and/or received transfers of assets to which Plaintiff—before those transfers were made—had a claim within the meaning of Conn. Gen. Stat. § 52-552b.

68.     The transfers of assets were transfers within in the meaning of Conn. Gen. Stat. § 52-552g.

69.     The transfers of assets were made to the Wyckoff Defendants, Defendant Hyde Park and, upon information and belief, the John Doe Defendants, without substantial consideration and with the actual intent to hinder, delay and defraud the Plaintiff.

70.     The transfers of assets were made without any reasonably equivalent value being given in exchange for the transfers.

71.     The transfers of assets were made with fraudulent intent.

72.     The Plaintiff has been injured and damaged as a direct and proximate cause of the transfer of assets in an amount to be determined at trial.

73.     Plaintiff is entitled to have these transfers voided and set aside, and to recover the transfers or the value thereof from Defendants and to an injunction against Defendants prohibiting them from further transferring the assets.

**Fourth Claim for Relief – Common Law Fraudulent Transfer**

**(Against All Defendants)**

74. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

75. Defendants either affected and/or received transfers of assets to which Plaintiff—before those transfers were made—had a claim within the meaning of Conn. Gen. Stat. § 52-552b.

76. Defendants either affected or received transfers that were fraudulent in that (A) they were made with actual intent to avoid the claims owed to Plaintiff, and/or (B) they were made to the Wyckoff Defendants, Defendant Hyde Park and, upon information and belief, the John Doe Defendants, without substantial consideration and with the actual intent to hinder, delay and defraud the Plaintiff.

77. Defendants had actual or constructive knowledge that the transfers were fraudulent at the time that they were made.

78. The Plaintiff has been injured and damaged as a direct and proximate cause of the transfers of Sutton's assets in an amount to be determined at trial.

79. Plaintiff is entitled to have these transfers voided and set aside, and to recover the transfers or the value thereof from Defendants and to an injunction against Defendants prohibiting them from further transferring the assets.

**Fifth Claim for Relief – Breach of Contract**

**(Against Elizabeth Wyckoff as Executrix of Estate of E. Lisk Wyckoff)**

80. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

81. At the time E. Lisk Wyckoff agreed to become a director of Sutton pursuant to Sutton's Articles of Association, he and Sutton, as part of that agreement, mutually agreed that E.

Lisk Wyckoff would be responsible for stewarding Sutton's assets on behalf of Sutton solely for Sutton's benefit.  The agreement was a valid, legally binding, and enforceable contract supported by adequate consideration.

82. By entering into the contract as an act of his own free will, Mr. Wyckoff agreed to abide by its terms.

83. By his conduct set forth above, however, Mr. Wyckoff has intentionally and maliciously breached his contract obligations.  Plaintiff, on the other hand, has performed its obligations under the contract.

84. Mr. Wyckoff's breach has caused Plaintiff to be injured and suffer damages in an amount to be determined at trial.

**Sixth Claim for Relief – Breach of Fiduciary Duty**

**(Against Defendant Elizabeth Wyckoff as Executrix of the Wyckoff Estate)**

85. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

86. Mr. Wyckoff was a fiduciary of Sutton during his tenure as Plaintiff's director starting in February 2000 and then as sole director from September 2004 to November 2012.  He also owed fiduciary duties pursuant to his agreement to steward Sutton's assets on behalf of Sutton solely for Sutton's benefit and well as pursuant to his obligations as a Sutton director.

87. As Plaintiff's fiduciary, Mr. Wyckoff owed to Plaintiff a duty of loyalty and an obligation to act in good faith and in Plaintiff's best interests.

88. Plaintiff placed its trust and confidence in Mr. Wyckoff to perform the duties and responsibilities by acting as a fiduciary.

89.     As set forth above, Mr. Wyckoff chose to advance his own interests to the detriment of Plaintiff, including but not limited to siphoning money out of Plaintiff's accounts and siphoning Plaintiff's assets into a sham Webster Bank account owned by his personal entity Hyde Park under an account labelled with Sutton's name, for which he falsely told Webster Bank that Sutton was Hyde Park's "doing business as" name.  He thereby induced Webster Bank to allow Mr. Wyckoff to withdraw Sutton's funds and use them for his own personal benefit. He attempted to perpetuate this fraudulent activity by fraudulently asserting that he was appointing his wife as a successor director of Sutton.  He further perpetuated his misconduct by failing and/or refusing to cause Sutton's bearer share to be redeemed in accordance with BVI law.

90.     Mr. Wyckoff abused his position of trust and confidence by stealing, embezzling, converting and misappropriating over $6.8 million of Plaintiff's assets for his own benefit.

91.     As a result of the Mr. Wyckoff's breaches of his fiduciary duties, Plaintiff has suffered financial harm in excess of $6.8 million, as well as additional damages to be determined at trial.  His estate, through its executor, Mrs. Wyckoff is therefore liable for the damages Sutton incurred as set forth above, in an amount to be determined at trial.

**Seventh Claim for Relief – Statutory Theft – Conn. Gen. Stat. § 52-564**

**(Against Elizabeth Wyckoff Individually and as Executrix of Estate of E. Lisk Wyckoff and Hyde Park Associates LLC)**

92.     Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

93.     Statutory or civil theft is synonymous with "larceny."

94.     Conn. Gen. Stat. § 53a-119 defines that a person commits larceny "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."  The statute identifies the specific offenses of embezzlement (when a person "wrongfully appropriates to himself or to another property of another in his care or custody") and false pretenses (when a person "by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person") as included within the definition of larceny.

95.     Defendants Mr. and Mrs. Wyckoff intentionally asserted control over Sutton's assets, including but not limited to those in accounts at Carlyle and Citi, and in the account in Sutton's name at Webster Bank, which Defendants knew they were not entitled to use for any purpose other than one in furtherance of Sutton's business and for Sutton's sole benefit. Instead, Defendants used said assets for their own, personal benefit, directly and/or indirectly, and, upon information and belief, for the benefit of their entities and family members.

96.     In addition, Defendant Hyde Park intentionally asserted control over Sutton's assets in the account at Webster Bank, which it knew it was not entitled to use for a purpose other than one in furtherance of Sutton's business, and instead used said information and control regarding that account and assets to, and the funds in that account for, its own, personal benefit and that of the Wyckoffs.

97.     Defendants Mr. and Mrs. Wyckoff repeatedly made intentional material misrepresentations to Webster Bank and Sutton which they intended and expected Webster Bank and Sutton to rely upon, and said misrepresentations were made to induce Webster Bank to continue

to provide Defendants with control over and access to Sutton's funds, which Defendants knew and intended to use, and in fact did use, for their own personal benefit, and which Defendants intended Sutton would rely on in believing that its assets were being handled appropriately for its sole benefit.

98.   In addition, Defendant Hyde Park repeatedly made intentional material misrepresentations to Webster Bank which it intended and expected Webster Bank to rely upon, and, by arranging for the Webster Bank account to use Sutton's name, falsely represented to Sutton that the account was Sutton's account.   These misrepresentations were made to induce Webster Bank to continue to provide Hyde Park with control over and access to Sutton's funds, which Hyde Park knew and intended to use, and in fact did use, for its own personal benefit, and were made to induce Sutton to believe that its assets were being handled appropriately for its sole benefit.

99.   At all relevant times, Defendants exercised ownership over Sutton's assets, including but not limited to those in accounts at Carlyle and Citi, and in Sutton's name at Webster Bank, to the exclusion of Sutton's rights.

100.   Defendants wrongfully and fraudulently took control over Sutton's assets, including but not limited to those in accounts at Carlyle and Citi, and in Sutton's name at Webster Bank in violation of Connecticut General Statute § 52-564.

101.   As a result of Defendants' violation of Connecticut General Statute § 52-564, Sutton has suffered damages in an amount to be determined at trial.

102.   Defendants' wrongful and intentional conduct as set forth above occurred in an effort to harm Sutton, secure funds to which they were not lawfully entitled, and deprive Sutton of use of the funds.

103.   Defendants' misappropriation of Sutton's assets, including but not limited to the funds in the account at Webster Bank, constitutes theft, embezzlement and/or appropriation by false pretenses.

104.   As a result, Defendants are liable to Sutton for statutory theft of at least $6.8 million, with the precise amount to be determined at trial, plus interest, pre-judgment interest and costs, including treble damages and common law punitive damages.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff claims:

1.   Actual, compensatory and consequential damages in an amount to be determined according to the evidence;

2.   Treble damages pursuant to Conn. Gen. Stat. § 52-564;

3.   Disgorgement of all profits received by Defendants, directly or indirectly through entities in which any such Defendant has a financial interest, that relate to Defendants' misappropriation of Sutton's assets and/or their breach of fiduciary duties to Sutton.Interest and costs;

4.   Punitive and exemplary damages where authorized by law;

5.   Pre-judgment and post-judgment interest at the legal rate where authorized by law;

6.   Reasonable attorneys' fees to the extent permitted by law; and

7.      Such other and further relief as the Court deems just and proper.

**<u>Demand for Trial by Jury</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  October 7, 2022

WITHERS BERGMAN LLP

By: _____
    John Farnsworth (CT20705)
    157 Church Street, 19th Floor
    New Haven, CT 06510
    Tel: (203) 253-5497
    Fax: (203) 285-1653
        *Counsel for Plaintiff Sutton Ltd*