**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SUTTON, LTD., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil No. 3:22-cv-01255 (OAW) |
| | : | |
| ELIZABETH WYCKOFF (individually | : | |
| and as Executrix of the estate of E. | : | |
| Lisk Wyckoff, deceased) and HYDE | : | |
| PARK ASSOCIATES LLC, | : | |
| *Defendants.* | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

**THIS ACTION** is brought by Plaintiff Sutton, Ltd. (hereinafter, "Sutton") against Defendants Hyde Park Associates LLC (hereinafter, "HPA") and Elizabeth Wyckoff (hereinafter, "Mrs. Wyckoff"), individually and in her capacity as Executrix of the estate of her deceased husband, E. Lisk Wyckoff (hereinafter, "Mr. Wyckoff"). ECF No. 38. Sutton alleges that Defendants "took advantage" of Mr. Wyckoff's position as Sutton's sole director to "steal" its assets and "conceal" their thefts. *Id.*, ¶ 1.

Defendants move the court to dismiss the operative Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. ECF Nos. 52, 53. The court carefully has reviewed the Motion to Dismiss, the parties' memoranda of law, and the broader record in this action. *See, e.g.*, ECF Nos. 38, 52, 53, 67, 81, 117. For all the following reasons, the Motion is **DENIED.**

I.    **BACKGROUND**

The following allegations are taken from the Amended Complaint and certain "public records that are integral to the underlying facts." *Errato v. Bendett & McHugh,*

1

*PC,* No. 3:23-CV-1674 (OAW), 2025 WL 1475508, at *1 (D. Conn. May 21, 2025) (providing that courts may "'take judicial notice'" of such records when "'considering a Rule 12(b)(6) motion'") (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

### A. Sutton and Mr. Wyckoff

Sutton is a British Virgin Islands company incorporated in 1985 to "hold various assets and/or funds" of its ultimate beneficial owner.[1]  ECF No. 38, ¶ 19.  At the time of its incorporation, Sutton issued a single "bearer share" certificate (hereinafter, the "Bearer Share") consistent with the then-controlling International Business Companies Act of 1984 (hereinafter, the "IBC Act").  *Id.*, ¶¶ 20, 21; *see also* ECF No. 53-1, at 2.  Under such Act, whoever held the Bearer Share could exercise shareholder rights over Sutton, including by appointing directors.[2]  ECF No. 38, ¶¶ 21, 23; *see also* ECF No. 53-1, at 2.  The IBC Act eventually was replaced by the BVI Business Companies Act of 2004 (hereinafter, the "BVIBC Act"), which required "all companies that had issued bearer shares to deposit [them] with a custodian" or convert them into "registered shares" by December 31, 2009.  ECF No. 38, ¶ 23.

In 2000, Sutton entered into an agreement with Mr. Wyckoff, pursuant to which he was appointed a director in exchange for "accepting and undertaking extensive fiduciary obligations."  *Id.*, ¶ 22.  Mr. Wyckoff then served as Sutton's "sole director" from 2004 until his death in 2012.  *Id.*, ¶¶ 22, 26.

---

[1] Based on the record before the court, Sutton's ultimate beneficial owner appears to be Prince Fahd Bin Abdullah Bin Mohammed Al-Saud of the Kingdom of Saudi Arabia, by virtue of his ownership of the "company that is the sole beneficiary of a trust that holds Sutton's sole share."  ECF No. 114-1, at 2, 5. However, Prince Fahd is not a party to this case, and it appears that he "is not currently nor has he ever been a director, officer, managing agent, representative, or employee of Sutton."  *Id.* at 2, 5.
[2] *See also* Sections 68(1) and (2) of the BVI Business Companies Act of 2004.

## B. <u>Bearer Share Litigation</u>

Following Mr. Wyckoff's death, Sutton's sole shareholder, the Battersea Trust (hereinafter, "Battersea") discovered that Mr. Wyckoff had "failed" to deposit or convert the Bearer Share before January 1, 2010, as was required by the BVIBC Act.  *Id.*, ¶¶ 21, 23–24, 41.  The Bearer Share was "disabled" as of that date, and Battersea could not exercise its shareholder rights over Sutton.  *Id.*, ¶¶ 23–26, 41.  In particular, Battersea could not appoint any new directors to "exercise any of Sutton's powers of redemption over the bearer share following [its sole director's] death."  *Id.*, ¶ 26.

Accordingly, in 2015, Battersea brought an action[3] in the British Virgin Islands seeking to "resolve the bearer share issue."  *Id.*, ¶ 28.  Three years later, following "extensive and lengthy court proceedings," the Eastern Caribbean Supreme Court, Court of Appeal for the British Virgin Islands (hereinafter, the "BVI Court"), appointed a receiver for that purpose (hereinafter, the "Receiver").[4]  *Id.*, ¶¶ 8, 28, 41.

## C. <u>Section 1782 Proceedings</u>

Once duly appointed, the Receiver brought actions in the United States under 28 U.S.C. § 1782, including in this District (hereinafter, the "Section 1782 Proceedings"), seeking "documents and information about Sutton's assets" from certain banks and Mrs. Wyckoff in her capacity as Executrix of Mr. Wyckoff's estate.  ECF No. 38, ¶¶ 28–35; *see also In Re: Carter*, 19-mc-00102-JBA, ECF No. 1 (D. Conn. Aug. 20, 2019).  Mrs. Wyckoff

---

[3] Such action was brought by "the Bank of Nova Scotia Trust Company (Bahamas) Limited, in its capacity as trustee" of Battersea.  ECF No. 38, ¶ 28.

[4] Sutton represents that the BVI Court "empowered the Receiver only to assess this bearer share issue" and that "the Receiver could not act as a representative of the then-disabled Sutton to pursue any claims or lawsuits on its behalf."  ECF No. 38, at ¶¶ 8, 28.

3

did not produce all responsive documents in her custody until January 29, 2021, despite being ordered to do so by the court (*Hon. Janet Bond Arterton, USDJ*) on September 5, 2019.  ECF No. 38, ¶¶ 32–34; *see also In Re: Carter*,19-mc-00102-JBA, ECF No. 7 (D. Conn. Sept. 5, 2019).  The court again ordered Mrs. Wyckoff to produce such documents and information on March 5, 2020, *see In Re: Carter*, 19-cv-1560-JBA, ECF Nos. 20 (proposed order), 21 (D. Conn. Mar. 5, 2020) (*Hon. Robert M. Spector, USMJ*), and to pay the Receiver $14,000 in attorney's fees as a sanction for her non-compliance, *see id.*, ECF No. 68 (D. Conn. Feb. 5, 2021) (*Hon. Robert M. Spector, USMJ*).  As a result of the Receiver's efforts, the BVI Court permitted Battersea to redeem the Bearer Share and appoint new directors for Sutton in 2021.  ECF No. 38, ¶ 41.

### D. Alleged Thefts and Concealment

Information obtained from the Section 1782 Proceedings allegedly revealed that the Wyckoffs had "perpetuat[ed] a sweeping theft of millions of dollars from Sutton for their personal use," and had conspired to conceal their thefts to prevent Sutton from ever bringing a lawsuit to recover its stolen funds.  *Id.*, ¶¶ 35–39; *see also id.*, ¶ 40 (accusing Defendants of "misappropriate[ing] Sutton's fund through a developed *modus operandi*").

Specifically, Sutton alleges that the Wyckoffs opened an account at Webster Bank, N.A. in 2002 for their personally owned limited liability company, HPA (hereinafter, the "HPA Account"), and held themselves out as "doing business as Sutton" to transfer funds from Sutton's bank accounts to the HPA Account.  *Id.*, ¶¶ 1, 37.  The Wyckoffs then distributed the stolen funds from the HPA Account to themselves and their affiliates.  *Id.*,

4

¶¶ 38–39.  At all relevant times, Sutton alleges that the HPA Account was "surreptitiously owned" by HPA and, ultimately, the Wyckoffs.  *Id.*, ¶¶ 11–13, 37.

Sutton further alleges that Mr. Wyckoff "attempted to appoint Mrs. Wyckoff as his successor" as sole director through a "legally invalid agreement," *see id.*, ¶¶ 27, 46, 53, and that Mrs. Wyckoff "falsely held herself out" as having authority over Sutton to continue transferring its funds into the HPA Account "at least through July 2020," *see id.* ¶¶ 6, 25–27, 46, 51–53.  Although the Wyckoffs regularly "communicated" with Sutton about its finances and knew that these transfers were "improper and illegal," the Wyckoffs "never disclosed" that the HPA Account "was not Sutton's" or that they were using it "for their personal gain."  *Id.* ¶¶ 1, 43–44.

Finally, Sutton alleges that Mr. Wyckoff "intentionally" failed to deposit or convert the Bearer Share consistent with the BVIBC Act so that Sutton could never discover the HPA Account and "commence an action" against Defendants.[5]  *Id.*, ¶ 41; *see also id.*, ¶ 46 (accusing Defendants of having "concealed" their alleged activities "for the purpose of misleading [Sutton] into inaction").

---

[5] The Amended Complaint references an investigation by the New York State Attorney General into, *inter alia*, the Wyckoffs' thefts from a charitable entity, the Homeland Foundation, of which they were trustees. ECF No. 38, ¶ 40.  The investigation resulted in a $4.3 million settlement and findings of various "breaches of . . . fiduciary duties" by the Wyckoffs, including the "use of charitable assets for personal gain." Press Release, N.Y. State Att'y Gen., A.G. Schneiderman Announces $4.3 Million Settlement With Former Leaders Of New York City-Based Charity Over Misuse Of Funds (Sept. 2, 2015), https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-43-million-settlement-former-leaders-new-york-city.  Sutton alleges that the facts underlying such investigation are "strikingly similar" to the facts underlying its claims. ECF No. 38, ¶ 40.  In Footnote 2 of their memorandum of law, Defendants "request" that the court strike all such references under Rule 12(f) of the Federal Rules of Civil Procedure. ECF No. 53, at 16 n. 2.  The court **denies** such request **without prejudice**.  Until Defendants have filed a Motion to Strike (with reasoning and citations to authority), and until Sutton has had an opportunity to file its objection, the court will not interfere with the pleadings.  *See Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (acknowledging that motions to strike "are viewed unfavorably" and "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible") (internal citations and quotation marks omitted).

### E. The Instant Action

Following the appointment of new directors in 2021, *see id.*, ¶ 41, Sutton brought the instant action against Defendants on October 7, 2022, *see* ECF No. 1, and filed the operative Amended Complaint on April 27, 2023, *see* ECF No. 38.  Based "upon information and belief," *see id.*, ¶¶ 6, 11, 13, 16, 27, 37–39, 41, 43, 44, 73, 113, 129, as well as documents obtained through the Section 1782 Proceedings, *see id.*, ¶¶ 11, 35, 37, Sutton asserts the following clams against all Defendants:

- **Count One:** Conversion;

- **Count Two:** Statutory Theft pursuant to Conn. Gen. Stat § 52-564;

- **Count Three:** Intentional Fraudulent Transfer pursuant to Conn. Gen. Stat. § 52-552(e);

- **Count Four:** Fraudulent Transfer;

- **Count Seven:** Civil Conspiracy; and

- **Count Eight:** Fraud, *see id.*, ¶¶ 60–97, 111–137.

It also asserts the following claims against Mrs. Wyckoff in her capacity as Executrix of Mr. Wyckoff's estate:

**Count Five:** Breach of Fiduciary Duty; and

**Count Six:** Breach of Contract, *see id.*, ¶¶ 98–110.

Sutton seeks, *inter alia*, actual damages of at least $6.8 million, punitive damages where authorized by law, and reasonable attorney's fees.  *See id.*, at 39.

Defendants move the court to dismiss the Amended Complaint in its entirety under Rule 12(b)(6).  ECF Nos. 52, 53.

## II.    LEGAL STANDARD

"The standard that governs a motion to dismiss under Rule 12(b)(6) is well established."  *Herlth v. Merck & Co.*, No. 3:21-CV-438 (JAM), 2022 WL 788669, at *2 (D. Conn. Mar. 15, 2022).  To survive, "'a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'"  *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged,' meaning that there is 'more than a sheer possibility that a defendant acted unlawfully.'"  *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  When considering a motion to dismiss, courts "accept all allegations in the [operative] complaint as true and draw all inferences in the light most favorable to the non-moving party's favor."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

In general, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" to state a plausible claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, because allegations of *fraud* are "subject to a heightened pleading standard" under Rule 9(b) of the Federal Rues of Civil Procedure, a party alleging fraud "must state with particularity the circumstances constituting fraud."  *Nakahata v. New York-Presbyterian Healthcare Sys.*, Inc., 723 F.3d 192, 197 (2d Cir. 2013) (citing Fed. R. Civ. P. 9(b)).

## III.    DISCUSSION

Defendants urge the court to dismiss the Amended Complaint because all of Plaintiff's claims are time-barred by the applicable statutes of limitations, *see* ECF No. 53, at 18–31, or, alternatively, because Plaintiff's allegations do not satisfy the heightened pleading standard under Rule 9(b), *see id.* at 31–43.

### A. Statute of Limitations

"A statute of limitations analysis is generally riddled with questions of fact which *the [d]efendants* must establish in order to bar [the plaintiff's] claims." *Bartold v. Wells Fargo Bank*, N.A., No. 14-CV-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (emphasis in original) (internal citation and quotation marks omitted).  Accordingly, a statute of limitations defense "may not be raised in a pre-answer motion" unless "the running of the statute is *apparent* from the face of the [operative] complaint." *Esposito v. Aldarondo*, No. 3:22-CV-00621 (MPS), 2023 WL 2228412, at *3 (D. Conn. Feb. 24, 2023) (emphasis added) (internal citation and quotation marks omitted); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989) (providing that, "where *the dates* in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss," but not otherwise) (emphasis added); *Pinkston v. Connecticut*, No. 3:09-CV-633 (JCH), 2009 WL 2852907, at *2 (D. Conn. Sept. 2, 2009) (recognizing that "while a statute of limitations defense is not ordinarily considered on a motion to dismiss, it is appropriate if *the dates* in question are undisputed") (emphasis added) (citing *Ghartey*, 869 F.2d at 162); *Bartold,* 2015 WL 7458504, at *4 (acknowledging that "unless the complaint alleges facts that create an

*ironclad* defense, a limitations argument must await factual development") (emphasis added).

Even when claims are indisputably time barred, they may survive dismissal if the plaintiff alleges "circumstances . . . that would permit the tolling of the limitation periods for these claims." *Chisholm v. United of Omaha Life Ins. Co.,* 514 F. Supp. 2d 318, 324 (D. Conn. 2007) (citing *OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 504–511 (D. Conn. 2007)).  The plaintiff generally "has the burden of pleading facts sufficient to establish that the statutes of limitations should be tolled."  *OBG Technical Servs., Inc.*, 503 F. Supp. 2d at 504. However, where "the allegations concerning tolling raise issues of fact," the "granting of a motion to dismiss" for untimeliness is "inappropriate."  *Dignan v. McGee*, No. 3:07-CV-1307JCH, 2008 WL 3850873, at *8 (D. Conn. Aug. 18, 2008).

1.   HPA and Mrs. Wyckoff in her individual capacity

HPA and Mrs. Wyckoff (in her individual capacity) argue that Sutton's claims against them are time barred.  ECF No. 53, at 24–31.  The court cannot agree, as such a finding would "require a factual inquiry beyond the face of the [operative] complaint." *Chisholm,* 514 F. Supp. 2d at 324.

Sutton alleges that HPA and Mrs. Wyckoff began stealing Sutton's funds, and concealing their thefts, in 2002, *see* ECF No. 38, ¶ 37, and continued doing so "at least through July 2020," *see id.*, ¶ 53.  Sutton commenced this action in 2022.  ECF No. 1.  All of its claims against HPA and Mrs. Wyckoff are subject to three-to-six-year statutes of limitations.  ECF No. 53, at 22-24 (citing, *inter alia*, Conn. Gen. Stat. §§ 52-552j, 52-576,

and 52-577).[6]  Accordingly, at least *some* of the alleged conduct underlying Sutton's claims against HPA and Mrs. Wyckoff occurred within three-to-six years of this action.  *Id.*

HPA and Mrs. Wyckoff do not attribute specific dates to much of their alleged conduct, which the Amended Complaint indicates to have taken place over the course of nearly twenty years.  *See* ECF No. 53, at 24 n. 6 (whereby Defendants admit that "it is not clear" when each of the HPA Account "transfers occurred"). "The face of the Amended Complaint" does not allege specific dates either, *see Walker v. Accenture PLC*, 511 F. Supp. 3d 169, 191 (D. Conn. 2020) (citing *Bartold*, 2015 WL 7458504, at *4), only that their conduct began in 2002 and continued "at least through July 2020," *see* ECF No. 38, ¶ 53; *see also* ECF No. 53, at 24 n. 6 (whereby Defendant concede that "the Amended Complaint does not allege the specific date" of each alleged HPA Account transfer). Because the court cannot assess the parties' timeliness and tolling arguments without such information, it hereby denies HPA's and Mrs. Wyckoff's statute of limitations defense as "premature," *see* ECF No. 67, at 10, without prejudice to renewal in a Motion for Summary Judgment, *see Dignan*, 2008 WL 3850873, at *8 (doing the same).

### 2. Mrs. Wyckoff in her capacity as Executrix

Sutton's claims against Mrs. Wyckoff in her capacity as Executrix are indisputably time barred.  ECF Nos. 53, at 19–20; 67, at 11–31.  Under Conn. Gen. Stat § 45a-375(c) (hereinafter, "Section 45a-375(c)"), "no claim may be presented and no suit on such claim may be commenced against . . . [an] estate . . . but within (1) two years from the date of the decedent's death or (2) the date upon which the statute of limitations applicable to

---

[6] Sutton does not appear to dispute the applicable statutes of limitations in its briefing.  *See generally*, ECF No. 67, at 10–36.

such claim . . . would otherwise have expired, whichever shall first occur."  Conn. Gen. Stat § 45a-375(c).  Sutton should have brought its claims against Mr. Wyckoff's estate by November 2014, but did not do so until October 2022.  ECF No. 1.  Hence, without tolling, Sutton's claims against the estate cannot survive under Rule 12(b)(6).

Mrs. Wyckoff argues that Section 45a-375(c) is not susceptible to tolling, *see* ECF No. 53, at 21–22, and, alternatively, that Sutton's allegations are insufficient to toll Section 45a-375(c), *see id.* at 24–31.  The court disagrees.

> ### a.  Section 45a-375(c) does not preclude the application of tolling doctrines to claims against estates.

Mrs. Wyckoff primarily relies on the following passage from *Redevelopment Agency of Norwalk v. ILSR Owens LLC* to support her assertion that "the Connecticut legislature intended that the 2-year time limit [in Section 45a-375(c)] would not be subject to further extension," even through tolling.  *Id.* at 21.

> "The legislative history . . . reveals that its purpose is to protect the beneficiaries of estates from being held liable in the future . . . . 'Limiting the period to bring claims to two years not only protects beneficiaries from suit, but also promotes the strong legislative policy of the probate code that favors the speedy administration of estates.'"

*Redevelopment Agency of Norwalk v. ILSR Owens LLC*, No. X08FSTCV186038249S, 2022 WL 3040655, at *10 (Conn. Super. Ct. Aug. 2, 2022) (quoting *Matey v. Estate of Dember*, 256 Conn. 456, 478 (2001)).  The court finds this passage unavailing, as it has nothing to do with tolling Section 45a-375(c) or any other issues raised in the instant

Motion to Dismiss.  *Id.* at \*9-\*11.  Rather, it concerns whether Section 45a-375(c) applies to the specific claims at issue in that case.[7]  *Id.*

The tolling doctrines play an important jurisprudential role.  They "developed . . . both at common law and by statute . . . to alleviate [the] unfairness" of having to dismiss untimely claims brought by plaintiffs who, for no fault of their own, could not pursue their causes of action during the applicable limitations periods.  *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 255 (D. Conn. 2015); *see also Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008) (recognizing that tolling only "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim") (internal citation and quotation marks omitted); *Martinelli v. Bridgeport Roman Cath. Diocesan Corp.*, 196 F.3d 409, 427 (2d Cir. 1999) (finding that tolling "because of the defendant's fraudulent concealment," for example, "obviously operates for the benefit of those—and we think only those—who are not aware of the facts that have been concealed"); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (acknowledging that tolling applies "where the claimant has actively pursued his judicial remedies," and not "where the claimant failed to exercise due diligence in preserving his legal rights").  For this reason, courts generally do not construe as absolute a statute of limitations absent an "affirmative indication" of

---

[7] In its Reply Memorandum, Defendants also point the court to *Skerritt v. Macarelli*, No. CV044000547, 2008 WL 3854345 (Conn. Super. Ct. July 30, 2008), *Cloutier v. Houseworth*, No. CV030476807S, 2004 WL 1783632 (Conn. Super. Ct. July 9, 2004), and *Doe v. Shimkus*, No. CV030822147S, 2004 WL 728855 (Conn. Super. Ct. Mar. 19, 2004).  The court also finds these cases unavailing, as they too concern how to apply conflicting statutes of limitations to claims against estates.  *See Skerritt*, 2008 WL 3854345, at \*2-\*5; *Cloutier*, 2004 WL 1783632, at \*2-\*4; *Shimkus*, 2004 WL 728855, at \*1-\*3.

the legislature's intent to "preclude" the possibility of tolling.[8]  *United States v. Wong*, 575 U.S. 402, 420 (2015) (citing *Irwin*, 498 U.S. at 95–96).

The court appreciates Connecticut's concern for the "beneficiaries of estates . . . being held liable" for a decedent's actions, long after such decedent's death.  *ILSR Owners LLC*, 2022 WL 3040655, at *10; *see also Watts v. Chittenden*, 301 Conn. 575, 602 (2011) (McLachlan, J., dissenting) (acknowledging that statutes of limitations "are designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty . . . and (2) to aid in the search for truth that may be impaired by the loss of evidence . . . [over time]").  "However," Mrs. Wyckoff's "overemphasis on this concern" would "lead to unfair results."  *Slainte Invs. Ltd. P'ship*, 142 F. Supp. at 255.  Because she fails to demonstrate that Connecticut intended such unfairness when enacting Section 45a-375(c), the court rejects her argument that the limitations period for claims against estates cannot be tolled.  *See Irwin*, 498 U.S. at 95–96 (recognizing that "time requirements in lawsuits between private litigants are customarily subject to equitable tolling") (internal citation and quotation marks omitted); *Connell v. Colwell*, 214 Conn. 242, 245 n. 4 (1990) (finding, for example, that Connecticut's fraudulent concealment statute, Conn. Gen. Stat. § 52-595, "constitutes a clear and unambiguous general exception to any [statute of limitations] that does not specifically preclude its application").

---

[8] Courts in Connecticut have found that it "do[es] not appear" that Section 45a-375(c) is a statute of repose or otherwise has "any jurisdictional implications," such that it is susceptible to tolling.  *Sessa v. Reale*, No. FSTCV166027750S, 2019 WL 11837063, at *1 (Conn. Super. Ct. Sept. 26, 2019); *see also* ECF No. 67, at 13 (citing cases).  Defendants do not appear to dispute this in their briefing.  *See generally*, ECF Nos. 53, 81.

### b. Sutton's allegations are likely sufficient to toll Section 45a-375(c).

Despite being time barred under Section 45a-375(c), Sutton argues that its claims against Mrs. Wyckoff (in her capacity as Executrix of Mr. Wyckoff's estate) may proceed under the "fraudulent concealment doctrine," *see* ECF No. 67, at 15–23, the "incompetency doctrine," *see id.* at 23–25, "equitable tolling," *see id.* at 25–27, and the "continuing course of conduct doctrine," *see id.*, at 27–31.  The standard for each doctrine is settled.  *See, e.g., Slainte Invs. Ltd. P'ship*, 142 F. Supp. 3d at 260 (recognizing that fraudulent concealment applies, under Conn. Gen. Stat. § 52-595, where a defendant "(1) knew of the facts constituting his fraud; (2) intentionally concealed those facts from Plaintiff; and (3) did so specifically to delay Plaintiff's filing of a civil complaint"); *Kirwan v. State*, 168 Conn. 498, 502 (1975) (finding that, if a "plaintiff were legally incompetent to sue or his access to the courts were impaired the statute could not commence the limitations period running until he regained his legal competency; otherwise, through no fault of his own, he could be barred from any redress and thus become a legally helpless and venerable target for any careless or malicious person"); *see Lopez v. Travelers Companies*, Inc., No. AANCV156019474S, 2016 WL 2890477, at *6–*7 (Conn. Super. Ct. Apr. 26, 2016) (finding that, despite being "infrequently addressed" by the state courts, a "litigant seeking equitable tolling bears the burden of proving that she has pursued her rights diligently and was precluded from filing suit by some extraordinary circumstance"); *see Khan v. Yale Univ.*, 511 F. Supp. 3d 213, 227 (D. Conn. 2021) (acknowledging that a plaintiff "may properly invoke the [continuing course of conduct] doctrine upon a showing that 'the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3)

14

continually breached that duty'") (quoting *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 311 (2014)).

The court's inclination is that Sutton's allegations may be sufficient to toll Section 45a-375(c) under fraudulent concealment, *see, e.g.,* ECF No. 38, ¶¶ 1, 41, 44 (alleging that Mr. Wyckoff "never disclosed" his alleged misdeeds and "intentionally" disabled the Bearer Share so that Battersea could not "commence an action" against him), and equitable tolling, *see id.*, ¶¶ 24–39, 41, 44–46, 51, 53 (describing the "extensive and lengthy court proceedings" undertaken to redeem the Bearer Share and reactivate Sutton, uncover Mr. Wyckoff's alleged misdeeds, and bring this action), in which case the two-year limitations period would accrue "from the time when [Sutton] first discover[ed] the existence of its cause[s] of action" against Mr. Wyckoff, *see Slainte Invs. Ltd. P'ship*, 142 F. Supp. 3d at 260; *see also Lopez*, 2016 WL 2890477, at *6 (noting that "the equitable tolling doctrine is based on a 'discovery rule'"); *Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 521 (1989) (recognizing that "[i]n Connecticut, a cause of action accrues," generally, "when . . . the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury").[9]

---

[9] Sutton alleges that it was disabled under the BVIBC Act, and thus incapable suing Defendants, between 2012 and 2021. ECF No. 67, at 23-25. It argues that the court should toll Section 45a-375(c) under the incompetency doctrine, and it cites to several examples where courts in Connecticut have done so on account of a party's disability. *Id.* (citing cases). However, these cases all concern plaintiffs who are *natural persons. Id.* (citing *Kirwan v. State*, 168 Conn. 498, (1975); *Spazzarini v. Letourneau*, No. HHDCV136039657S, 2015 WL 2261307, (Conn. Super. Ct. Apr. 22, 2015); *Mulero v. Snow*, No. HHDCV125036003S, 2013 WL 1715584 (Conn. Super. Ct. Mar. 26, 2013); *Sandstrom on Behalf of Sandstrom v. Chemlawn Corp.*, 759 F. Supp. 84 (D. Conn. 1991); *D'Ambrosia v. Barbieri*, No. CIV. H-85-755 (PCD), 1986 WL 15787, at *1 (D. Conn. Aug. 27, 1986); *Brouillard v. State*, No. MMXCV116004226S, 2012 WL 2547366, at *1 (Conn. Super. Ct. June 4, 2012). Sutton presents the court with no evidence that the incompetency doctrine applies equally to claims brought by *entities. Id.* Should Sutton again invoke the incompetency doctrine during this action, the court respectfully directs the parties to address this issue in their briefing. *See also* ECF No. 81, at 7–9.

However, it is unclear from the Amended Complaint when Sutton "first discover[ed]" its "cause[s] of action." *Slainte Invs. Ltd. P'ship*, 142 F. Supp. 3d at 260. It could be when Battersea realized that the Bearer Share was disabled (in 2012), or when Battersea petitioned the BVI Court to appoint the Receiver (in 2015), or during the Section 1782 Proceedings (in 2018), or only after the BVI court permitted the appointment of new directors (in 2021), as Sutton suggests. *See* ECF Nos. 67, at 15; 81, at 9–11; *see also* ECF No. 53, at 27–28. Without further clarity on this issue, the court cannot assess the parties' timeliness and tolling arguments.[10] *See World Wrestling Ent., Inc. v. THQ, Inc.*, No. X05CV065002512S, 2008 WL 4307568, at *12 (Conn. Super. Ct. Aug. 29, 2008) (acknowledging that "the tolling benefits of [fraudulent concealment under] Section 52-595 may only be utilized if a plaintiff has exercised due diligence after being placed on inquiry notice of the existence of a cause of action"); *Lopez*, 2016 WL 2890477, at *6 (recognizing that equitable tolling will only "permit a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim" during the limitations period) (internal citation and quotation marks omitted); *see also Ghartey,* 869 F.2d at 163 (acknowledging that the "general rule in this circuit is that a cause of action accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action'") (quoting *King v. New York Tel. Co.*, 785 F.2d 31, 33 (2d Cir. 1986)).

---

[10] This is especially true here, as Sutton invokes several tolling doctrines in addition to equitable estoppel, "to which the courts may resort [only] when *no other* tolling doctrines are applicable." *Beendarz v. Eye Physicians of Cent. Connecticut, P.C.* 287 Conn. 158, 167 n. 8 (2008). Additionally, courts in Connecticut have found that the "equitable tolling doctrine does not apply" to certain torts under Conn. Gen. Stat. § 52-577. *See Bernier v. Travelers Prop. Causalty Ins. Co.*, No. 3:24-CV-1061 (VAB), 2025 WL 2379310, at *24 (D. Conn. Aug. 15, 2025); *see also Essex Ins. Co. v. William Kramer & Assocs.*, Inc., No. 3:13-CV-1537 (MPS), 2016 WL 3198190, at *18 (D. Conn. June 8, 2016), *aff'd sub nom. Evanston Ins. Co. v. William Kramer & Assocs., LLC*, 925 F.3d 604 (2d Cir. 2019) (citing cases).

"Normally, a motion to dismiss is not a proper avenue by which to raise a special defense," including a statute of limitations defense. *Dignan*, 2008 WL 3850873, at *8 (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir.2004) (recognizing that special defenses should be raised in a pre-answer motion only if they can be assessed "based on facts appearing on the face of the [operative] complaint")).  The instant Motion to Dismiss demonstrates why.  ECF No. 52.  Where, as here, "the allegations concerning tolling raise issues of fact," the "granting of a motion to dismiss" for untimeliness is "inappropriate" and the statute of limitations defense should be denied "without prejudice to raising" after discovery.  *Id.*; *see also Bartold*, 2015 WL 7458504, at *5 (rejecting a statute of limitations defense because "it is not plain on the face of the complaint" that the plaintiff's allegations did not toll the statute of limitations).  Therefore, despite its inclination that Sutton's allegations may be sufficient to toll Section 45a-375(c), the court denies Mrs. Wyckoff's statute of limitations defense without prejudice to renewal in a Motion for Summary Judgment.  *See Dignan*, 2008 WL 3850873, at *8 (doing the same).

### B. Heightened Pleading Standards

#### 1. Sutton must satisfy Rule 9(b) as to all claims against all Defendants.

Defendants argue that all of Sutton's claims—conversion, statutory theft, intentional fraudulent transfer, fraudulent transfer, breach of fiduciary duty, breach of contract, civil conspiracy, and fraud—are subject to heightened pleading standards under

Rule 9(b).[11]  ECF No. 53, at 31–32.  The court agrees.  *See Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004).

Pleadings "must state with particularity the circumstances constituting fraud" under Rule 9(b).  Fed. R. Civ. P. 9(b).  Specifically, they must **(i)** "'detail the statements (or omissions) that the plaintiff contends are fraudulent,'" **(ii)** "'identify the speaker,'" **(iii)** "'state where and when the statements (or omissions) were made,'" and **(iv)** "'explain why the statements (or omissions) are fraudulent.'" *U.S. ex rel. Monda v. Sikorsky Aircraft Corp.*, No. CIV.3:99CV1026 (JBA), 2005 WL 1925903, at \*2 (D. Conn. Aug. 11, 2005), *aff'd*, 207 F. App'x 28 (2d Cir. 2006) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1994)); *see also id.* (characterizing "this pleading standard as the 'who, what, when, where, and how' of the alleged fraud").  These "heightened pleading requirements" apply not only to fraud, but to "any claims which 'sound in fraud.'" *Demirovic v. Ortega*, No. 15 CV 327 (CLP), 2016 WL 11472745, at \*9 (E.D.N.Y. Sept. 15, 2016), *aff'd*, 771 F. App'x 111 (2d Cir. 2019) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). District courts throughout the Second Circuit "have dismissed claims that sound in fraud but fail to plead the particular circumstances with sufficient particularity to meet the requirements of Rule 9(b)." *Id.* (citing cases).

Determining "whether a claim sounds in fraud 'necessarily requires case-by-case analysis.'" *Id.* at \*10 (quoting *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 442 (S.D.N.Y. 2015)).  Notwithstanding, a claim generally "sounds in fraud when . . . the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim," such as when "fraudulent behavior lies at the heart of [the] claim," or the claim "arise[s] out of a

---

[11] Sutton only brings claims of breach of fiduciary duty and breach of contract against Mrs. Wyckoff in her capacity as Executrix of Mr. Wyckoff's estate.  *See* ECF No. 38, ¶¶ 98–110.

fraudulent scheme." *Levy*, 103 F. Supp. 3d at, 442 (internal citation and quotation marks omitted); *see also Kalaj v. Kay*, No. 21-CV-4395(EK)(JRC), 2023 WL 4564795, at *11 (E.D.N.Y. July 17, 2023).  For example, a claim must satisfy Rule 9(b) if it "arose out of events that the pleading describes in terms of fraud," *see Levy,* 103 F. Supp. 3d at, 442, or incorporates allegations that "contain the usual 'buzz' words 'classically associated with fraud'" or otherwise "allege [that the defendants] . . . did anything secretly, concealed any information, or failed to disclose a material fact," *see In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 430 (Bankr. S.D.N.Y. 2005) (quoting *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004)).

The court carefully has reviewed the Amended Complaint and finds that Sutton's claims all sound in fraud, based on these criteria.  Each claim "arise[s] out of a fraudulent scheme," *see Levy,* 103 F. Supp. 3d at, 442, whereby Defendants allegedly "perpetuat[ed] a sweeping theft of millions of dollars from Sutton" and conspired to "prevent" Sutton from ever recovering its stolen funds, *see* ECF No. 38, ¶¶ 35, 42.  Sutton alleges that Defendants acted "in secret" to steal from and disable Sutton, and thereafter "concealed . . . [and] failed to disclose" their conduct from Sutton.  *See, e.g.,* ECF No. 38, ¶¶ 1, 6, 12–13, 25–27, 35, 37–40, 43–44, 46, 51, 53.  These allegations are riddled with descriptors "'classically associated with fraud,'" *see In re Grumman Olson Indus., Inc.*, 329 B.R. at 430 (quoting *Rombach*, 355 F.3d at 172), including that Defendants "misappropriated Sutton's funds through a developed *modus operandi* of stealing from companies that they managed or to whose assets they had access," *see* ECF No. 38, ¶ 40; that the HPA Account was "surreptitiously owned" by HPA and, ultimately, the Wyckoffs, *see id.*, ¶ 11; that Mrs. Wyckoff "falsely held herself out" as having authority

19

over Sutton after Mr. Wyckoff's death, *see id.,* ¶¶ 6, 27; that the Wyckoffs knew that the HPA Account transfers were "improper and illegal," yet "never disclosed" this to Sutton; *see id.,* ¶¶ 43-44; that Mr. Wyckoff disabled the Bearer Share "intentionally to perpetuate Defendants' theft of Sutton's assets and to do so without ever being discovered;" *see id.,* ¶ 41; and that the Wyckoffs "concealed" their alleged activities "for the purpose of misleading [Sutton] into inaction," *see id.,* ¶46.  Each of Sutton's claims incorporates these allegations "fully," *see id.,* ¶¶ 60, 69, 83, 91, 98, 106, 111, 121, and many repeat them outright, *see, e.g., id.,* ¶¶ 73–76 (alleging that Defendants "repeatedly made material misrepresentations to . . . Sutton"), ¶ 102 (alleging that Mr. Wyckoff knowingly made false representations and invalid agreements to "perpetuate his misconduct"), ¶ 109 (alleging that, through the conduct "set forth above," Mr. Wyckoff "intentionally and maliciously" breached his contractual duties to Sutton), ¶ 117 (alleging that the Wyckoffs conspired to defraud Sutton through "wrongful and intentional acts").

The court's finding aligns with Rule 9(b)'s purpose to "provide a defendant with fair notice of a plaintiff's claim," to "safeguard a defendant's reputation from improvident charges of wrongdoing," and to "protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) (internal citations and quotation marks omitted).  There are some to whom it may seem harsh applying Rule 9(b) to claims where fraud is not a "necessary element." *Fed. Paper Bd. Co. v. Amata*, 693 F. Supp. 1376, 1390 (D. Conn. 1988).  However, the "'wording [of Rule 9(b)] is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.'" *Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 573 F. Supp. 3d 671,

684 n. 7 (D. Conn. 2021) (citing *Rombach*, 355 F.3d at 170).  Perhaps, for this reason, the United States Court of Appeals for the Second Circuit has "explicitly rejected the idea of an elements-based approach to the Rule's application," in favor of the approach taken here.  *Id.* (citing *Rombach*, 355 F.3d at 170); *see also Levy*, 103 F. Supp. 3d at, 442 (acknowledging that "*Rombach* is the leading circuit case on when Rule 9(b) applies to non-fraud [claims]").

> 2. <u>Accepted as true and considered within the context of Mr. Wyckoff's role as Sutton's sole director, the Amended Complaint satisfies Rule 9(b).</u>

Finally, Defendants argue that none of Sutton's claims satisfies Rule 9(b)'s heightened pleading standard.  ECF No. 53, at 10, 32–43.  The court disagrees.

A complaint alleging fraud ordinarily must **(i)** "'detail the statements (or omissions) that the plaintiff contends are fraudulent,'" **(ii)** "'identify the speaker,'" **(iii)** "'state where and when the statements (or omissions) were made,'" and **(iv)** "'explain why the statements (or omissions) are fraudulent.'" *Monda*, 2005 WL 1925903, at *2, (quoting *Segui*, 91 F.3d at 347).  Ultimately, however, the "'adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific.'" *Connecticut Gen. Life Ins. Co.,* 573 F. Supp. 3d at 678 (quoting *United States ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med. Resp., Inc.*, 865 F.3d 71, 81 (2d Cir. 2017)).  When a plaintiff alleges continuous fraud occurring "'during a period of . . . multiple years,'" for example, "Rule 9(b) 'does not require a plaintiff to set forth a complete history of every transaction.'" *Id.*

21

(quoting *White v. Allstate Ins. Co.*, No. 3:98-CV-1586, 2000 WL 303435, at \*2 (D. Conn. Feb. 1, 2000)).[12]

Additionally, Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," *see* Fed. R. Civ. Pro. 9(b)), "for the simple reason that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind," *see Conn. Gen. Life Ins. Co.*, 573 F. Supp. 3d at 678–79.

As discussed, the Amended Complaint contemplates a nearly-twenty-year period during which the following allegedly occurred: nearly seven-million-dollars' worth of thefts, *see* ECF No. 38, ¶¶ 35–39, 68, 82, 103, 104, 119, 120, 130, 135, 136; a scheme to conceal, through omissions and misrepresentations, Sutton's non-ownership of the HPA account, *see id.*, ¶¶ 35–39; the death of Sutton's sole director, Mr. Wyckoff, *see id.*, ¶¶ 22, 26; the invalid assumption of Mr. Wyckoff's directorial prerogatives by Mrs. Wyckoff, *see id.*, ¶¶ 6, 25–27, 46, 51–53; the disability of Sutton as a British Virgin Islands Company, *see id.*, ¶¶ 21, 23–26, 41, 43; a novel, lengthy, and costly lawsuit to redeem Sutton's Bearer Share and appoint new directors, *see id.*, ¶¶ 8, 28, 41; Sutton's years-long receivership, *see id.*; and Sutton's Section 1782 Proceedings against Mrs. Wyckoff, *see id.*, ¶¶ 28-35. Considering this complex backdrop, as well as Sutton's not-

---

[12] Sutton's allegations appear to be based "[u]pon information and belief." ECF No. 38, ¶¶ 6, 11, 13, 16, 27, 37-39, 41, 43, 44, 73, 113, 129. Allegations sounding in fraud may be based upon information and belief when "much of the factual information needed to fill out [a] plaintiff's complaint lies peculiarly within the opposing parties' knowledge," *see DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987) (collecting cases), in which event the complaint only need allege "sufficient factual predicates to give rise to a strong inference of fraud" to satisfy Rule 9(b), *see In re Nash Eng'g Co.*, No. 3:24-CV-00640 (JCH), 2024 WL 3429349, at \*13 (D. Conn. July 15, 2024). Despite the court's inclination that Sutton may proceed upon information and belief, given Mr. Wyckoff's role as its sole director, Sutton did not brief the issue, *see generally* ECF No. 67, as might have been helpful here. *See Schneider's Dairy, Inc.*, 2013 WL 6485367, at \*2 (recognizing that it "is not the [c]ourt's job 'to research and construct legal arguments open to parties, especially when they are represented by counsel'") (quoting *330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000), *amended* (Feb. 22, 2000)).

unreasonable belief that its allegations "are just the tip of the proverbial iceberg of the Wyckoffs' multimillion dollar misappropriation of [its] assets," the court finds that Sutton's allegations are adequately particularized under Rule 9(b).[13]  ECF No. 38, ¶ 13.

Sutton alleges ample facts to "provide" Defendants "with fair notice" of its claims, *see O'Brien*, 936 F.2d at 676 (internal quotation marks omitted), including itemized lists of transactions through which it alleges Defendants stole its funds, *see* ECF No. 38, ¶¶ 36–39, 61, 72, 115, and about which it alleges Defendants made deliberate omissions or misrepresentations, *see id.*, ¶¶ 44–46, 50, 59, 125, 127.  "[A]ccepted as true," *see Tanvir,* 894 F.3d at 458, the allegations about Defendants' years-long efforts to steal Sutton's funds and conceal their thefts, *see id.*, ¶¶ 11–13, 25–27, 35–39, 41, 43–44, 46, 51–53, and Sutton's years-long efforts to restore its capacity to file suit against Defendants, *see id.*, ¶¶ 23–26, 28–35, 38, 41, demonstrate that the instant action is neither an "improvident" reputational attack, nor a mere "strike suit," *see O'Brien,* 936 F.2d at 676 (internal quotation marks omitted).

Like all Federal Rules of Civil Procedure, Rule 9(b) must "be construed, administered, and employed . . . to secure the just . . . determination of every action." Fed. R. Civ. P. 1; *see also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966) (recognizing that, when they "work as they should," the Federal Rules "not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits").  Accordingly, the "'adequacy of particularized allegations

---

[13] Based on these allegations, the court also finds that the Amended Complaint otherwise "contain[s] sufficient factual matter, accepted as true," to state plausible claims of conversion, statutory theft, intentional fraudulent transfer, fraudulent transfer, breach of fiduciary duty, breach of contract, civil conspiracy, and fraud under Rule 12(b)(6).  *Tanvir*, 894 F.3d at 458, *aff'd*, 592 U.S. 43 (2020) (internal citations and quotation marks omitted); *see also Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (acknowledging that, when reviewing a motion to dismiss under Rule 12(b)(6), "the court's task is to assess the legal feasibility of the complaint").

under Rule 9(b) is,'" necessarily, "'case- and context-specific.'" *Connecticut Gen. Life Ins. Co.,* 573 F. Supp. 3d at 678 (quoting *Chorches*, 865 F.3d at 81).  The relevant context, here, is that Mr. Wyckoff allegedly stole millions of dollars from Sutton and systematically concealed such thefts (up until his passing) in breach of his contractual and fiduciary duties to keep Sutton accurately informed about its finances.  *See generally*, ECF No. 38. The court finds that Sutton reasonably cannot be expected to allege much more than it has already, given Mr. Wyckoff's role as its sole director and Mrs. Wyckoff's alleged subsequent assumption of his directorial duties.  Therefore, Defendants' request to dismiss Sutton's claims under Rule 12(b)(6) for failing to satisfy Rule 9(b)'s heightened pleading requirements is denied.

## IV.  **CONCLUSION**

For all the foregoing reasons, it hereby is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss is **DENIED;**

2. The stay of discovery previously imposed, *see* ECF No. 117, is **LIFTED;**

3. Given the age of this case, the parties are **REFERRED** to a United States Magistrate Judge for a settlement conference and the Clerk of Court respectfully is directed to please assign a Magistrate Judge (other than The Honorable Robert A. Richardson) for that purpose**; AND**

4. Within **FOURTEEN DAYS** of appearing before a Magistrate Judge for a pre-settlement conference, the parties are **ORDERED** to meet, confer, and file a joint status report containing, *inter alia*, proposed updated deadlines to the now-expired Scheduling Order, *see* ECF No. 113.

25

**IT IS SO ORDERED** at Hartford, Connecticut, on this 31st day of March, 2026.

        /s/        
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE
